FRANK NORDONE CONTRACTING CO., INC., Respondent, *v.* CITY OF NEW YORK, Appellant.

</div>

MARTIN, P. J. (dissenting). The plaintiff is not entitled to recover in this action, which is the usual type brought against the City when the contractor has found the work more costly than anticipated. There are several reasons for such a conclusion.

The proposals for bids included in the contract between the appellant and the respondent advised prospective bidders that "Before bidding, Contractors must satisfy themselves by personal examination of the Plans, Specifications, Contract, and location of the proposed work and by such other means as they may prefer, as to the accuracy of the * * * statement and they must determine for themselves, and allow for all difficulties which may be encountered in the prosecution of the work."

The plan of work submitted to the respondent by the appellant carried the cautionary notice that the rock profile indicated was not guaranteed. (See *Dunn* v. *City of New York*, 205 N. Y. 342; *Dean* v. *Mayor, etc., of New York*, 167 N. Y. 13.)

Despite these warnings the respondent submitted a bid and accepted the contract without making any subsurface examination of the site. Respondent's officials walked over the site of the work and decided how they would operate, but made no tests or borings, had no discussion with anyone as to subsurface conditions and made no attempt to learn whether the Borough President's office had any record regarding subsurface conditions.

The respondent commenced the excavation work on October 20, 1941, and within an hour or two discovered the actual condition. Immediately upon such discovery the respondent made claim to the chief engineer that it was entitled to additional compensation for excavation of the boulders or rock material. After investigation the chief engineer disallowed the claim. The contract provided: "33. Rock excavation shall only include the excavation and removal of unbroken ledge rock which shall be determined to be of such a character as to warrant its removal by blasting, in order to insure the prompt and proper prosecution of the work. No boulders or pieces of rock or masonry in mortar and concrete entirely or partly within the trench or pieces of rock, masonry, concrete or boulders, which fall or slide into the trench from beyond the lines thereof as herein defined, will be measured, and paid for as rock but the cost of the removal of the same shall be covered by the contract prices for all the items for which there are contract prices."

By the terms of the contract the decision of the chief engineer was conclusive (*Sweet* v. *Morrison*, 116 N. Y. 19).

Respondent continued working and on November 6, 1941, a letter was written to appellant by respondent in which the latter stated in part: "We now have reason to believe, this area was filled in a number of years ago with huge rocks brought there by railroad flat cars. * * * We are pursuing the work and intend to carry the contract to completion, with the reservation that we intend to make a claim for compensation for the removal of this rock * * *."

The work was completed about the end of June, 1942, and about August 17, 1942, respondent accepted from appellant the final payment. The contract provided that the acceptance of the final payment released the appellant "from all claims of and liability to the Contractor and to the Contractor's representa-

tives and assigns for anything done, furnished for or relating to the work or for any neglect of The City or by any person relating to or affecting the work * * *."

The respondent accepted the final payment with full knowledge of the facts and the nature and extent of its claim. In doing so it released the appellant from any and all claims arising under or by virtue of the contract (*Allen* v. *City of Oneida*, 210 N. Y. 496; *Oakhill Contracting Co.* v. *City of New York*, 262 App. Div. 530).

The record contains no direct evidence that the appellant had knowledge of the subsurface conditions complained of. The construction of the Jerome Park Reservoir was a function of the Aqueduct Commission, an entity separate and apart from the appellant, which is not chargeable with knowledge of anything which the records of that commission may disclose. The 1897 contract between the Board of Park Commissioners of the City of New York and John B. MacDonald made no reference to the sources of the material to be used as fill. The knowledge which employees of the appellant may have acquired in their individual and personal capacity is not chargeable to the appellant. There is no evidence of knowledge on the part of any of the individuals in their official capacity. Of course, any information contained in matter found in the public library was available equally to the respondent and to the appellant (*Dunn* v. *City of New York*, 205 N. Y. 342, 353, *supra*).

To allow respondent to recover here would destroy the efficacy of competitive bidding for public contracts. Respondent was advised to visit the site and familiarize itself with existing conditions. It knew chances had to be taken, risks had to be run and unforeseen contingencies had to be anticipated (*Weston* v. *State of New York*, 262 N. Y. 46; *Dunn* v. *City of New York*, *supra*).

Respondent made only a very superficial inspection of the site and, even after encountering the condition complained of, continued the work and accepted final payment. Legitimate bidders may not effectively compete for public contracts if a disappointed contractor is permitted to recover on the proof in this record.

The judgment in favor of the respondent and the order awarding counsel an additional allowance should be reversed and the complaint dismissed.

Dore, Cohn, Callahan and Wasservogel, JJ., concur in decision; Martin, P. J., dissents in opinion.

Judgment and order affirmed, with costs. No opinion